FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 30, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEBBIE K.,[1]<br>            Plaintiff,<br><br>    vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br>            Defendant. | No. 1:19-cv-03078-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 13, 14 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 14. The parties consented to proceed before a magistrate judge. ECF No.

_____

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 13, and grants Defendant's motion, ECF No. 14.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 26, 2015 and November 1, 2016, Plaintiff applied both for Title

II disability insurance benefits and Title XVI supplemental security income

benefits alleging a disability onset date of August 14, 2015. Tr. 164-70, 182-90.

The applications were denied initially and on reconsideration. Tr. 90-96, 98-102.

Plaintiff appeared before an administrative law judge (ALJ) on October 6, 2017.

Tr. 33-66. On April 13, 2018, the ALJ denied Plaintiff's claim. Tr. 12-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 14, 2015.  Tr. 18.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, left shoulder derangement, asthma, chronic obstructive pulmonary disease (COPD), and hypertension.  Tr. 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  Tr. 20.  The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] can lift and or carry 20 pounds occasionally and 10 pounds frequently; she can stand and or walk 6 hours in an 8-hour workday; she can sit 6 hours in an 8-hour workday; pushing and pulling unlimited except as indicated for lifting and carrying; she can frequently climb ramps and stairs; she can occasionally climb ladders, ropes, and scaffolds; she can frequently balance and stoop; she is unlimited in her ability to kneel, crouch and crawl; she is reaching overhead and in front[3] with the left non-dominant hand; she has no

---

[3] The RFC contains two errors with respect to Plaintiff's left arm reaching limitations.  Tr. 21.  The ALJ gave significant weight to the opinion of state agency medical consultant, Howard Platter, M.D., who opined that Plaintiff was limited to occasional reaching overhead, in front, and/or laterally with her left arm.  Tr. 24; *see* Tr. 84-85.  In his hypothetical to the vocational expert, the ALJ included a limitation to occasional reaching overhead, in front, and laterally with the left arm.

ORDER - 7

limitation of the right dominant upper extremity; she is unlimited in handling, fingering, and feeling; she must avoid concentrated

---

Tr. 60. First, the ALJ failed to include the word "occasional" in the RFC when listing Plaintiff's left arm reaching limitations. *See* Tr. 21 ("she is reaching overhead"). Based on the language of the RFC, this appears to be a typographical error. Second, while the RFC included Plaintiff's limitation to occasional reaching overhead and in front with her left arm, the ALJ failed to include in the RFC a limitation to occasional lateral reaching with the left arm. Tr. 21. Plaintiff fails to assert any challenge to this error. Therefore, argument on this issue is waived. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). However, any error is harmless, as the ALJ posed a hypothetical to the vocational expert that included a limitation to occasional reaching overhead, in front, and laterally with the left arm. Tr. 60. The vocational expert testified that an individual with such limitations would be capable of performing jobs that existed in significant numbers in the national economy. Tr. 60-63.

ORDER - 8

exposure to extreme cold, fumes, odors[,] dusts, gases, moving
machinery, and unprotected heights.

Tr. 21.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 24. At step five, the ALJ found that prior to July 17, 2017, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as furniture rental consultant, laminating-machine offbearer, and tanning salon attendant. Tr. 25-26. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of August 14, 2015, through July 16, 2017. Tr. 26-27. The ALJ found that, beginning on July 17, 2017, the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 26. The ALJ concluded that Plaintiff was not disabled prior to July 17, 2017 but became disabled on that date and continued to be disabled through the date of the ALJ's decision. Tr. 26.

On February 15, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 9

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated lay witness evidence.

ECF No. 13 at 1-2.

## DISCUSSION

### A.    Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of William Drenguis, M.D. and Mary Hardison, ARNP.  ECF No. 13 at 4-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202.  "In addition, the regulations

give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

2014) (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[4]

However, an ALJ is required to consider evidence from non-acceptable medical

sources. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. §§

404.1513(d), 416.913(d) (2013). "Other sources" include nurse practitioners,

physicians' assistants, therapists, teachers, social workers, spouses and other non-

medical sources. 20 C.F.R. § 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). An

ALJ may reject the opinion of a non-acceptable medical source by giving reasons

germane to the opinion. *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Drenguis

William Drenguis, M.D. completed a physical evaluation of Plaintiff on

April 15, 2017. Tr. 379-84. Dr. Drenguis diagnosed Plaintiff with left shoulder

internal derangement, cervical pain, low back pain, and asthma. Tr. 383. He

opined that Plaintiff could stand/walk for at least two hours in an eight-hour

workday and sit for about six hours in an eight-hour workday. Tr. 383. Dr.

Drenguis stated that Plaintiff could lift/carry 20 pounds occasionally and 10

---

[4] For cases filed prior to March 27, 2017, the definition of an acceptable medical

source, as well as the requirement that an ALJ consider evidence from non-

acceptable medical sources, are located at 20 C.F.R. §§ 404.1513(d), 416.913(d)

(2013).

pounds frequently.  Tr. 383.  Dr. Drenguis opined that Plaintiff could frequently reach overhead and reach forward with her dominant right upper extremity but could only occasionally reach overhead and reach forward with her left upper extremity.  Tr. 384.  He also opined that Plaintiff could frequently handle, finger, and feel with both upper extremities.  Tr. 384.  He noted that Plaintiff could occasionally climb stairs, ladders, scaffolds, and ropes, and could occasionally stoop, kneel, crouch, and crawl.  Tr. 383-84.  Dr. Drenguis limited Plaintiff's ability to work around dust, fumes, and gases.  Tr. 384.

The ALJ gave Dr. Drenguis' opinion partial weight.  Tr. 23.  Because Dr. Drenguis' opinion was contradicted by the nonexamining opinion of Dr. Platter, Tr. 76-87, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Drenguis' opinion.  *Bayliss*, 427 F.3d at 1216.

### a.  Dr. Platter

Here, the ALJ fully credited the opinion of State agency medical consultant, Howard Platter, M.D.  Tr. 24.  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at 1041.  Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's

ORDER - 13

opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Dr. Platter reviewed the medical record and opined that Plaintiff could stand and/or walk for about six hours and sit for about six hours in an eight-hour workday. Tr. 84. He determined that Plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. Tr. 83-84. He opined that Plaintiff was able to frequently climb ramps and stairs, balance, and stoop, and occasionally climb ladders, ropes, and scaffolds. Tr. 84. Dr. Platter opined that Plaintiff was limited to occasional reaching in front, laterally, and overhead with her left side. Tr. 84-85. He determined that she should avoid concentrated exposure to extreme cold, hazards, fumes, odors, dust, gases, and poor ventilation. Tr. 85. Dr. Platter

opined that Plaintiff was capable of performing light work.  Tr. 86.  The ALJ gave

Dr. Platter's opinion significant weight.  Tr. 24.

Plaintiff fails to assert any challenge to the ALJ's evaluation of Dr. Platter's

opinion.  Therefore, argument on this issue is waived.  *See Carmickle*, 533 F.3d at

1161 n.2 (determining Court may decline to address on the merits issues not

argued with specificity); *Kim*, 154 F.3d at 1000 (the Court may not consider on

appeal issues not "specifically and distinctly argued" in the party's opening brief).

Despite Plaintiff's waiver, the Court reviewed the record and finds the ALJ's

weighing of Dr. Platter's medical opinion is supported by, and consistent with,

other evidence in the record.

The ALJ found that the opinion of Dr. Platter was consistent with the

objective medical evidence.  Tr. 24.  As discussed *infra*, the ALJ determined that

Dr. Drenguis' opinion was inconsistent with the medical evidence, and thus

provided a legally sufficient reason for giving less weight to the opinion of Dr.

Drenguis, and for giving more weight to Dr. Platter's opinion.

b.  Inconsistent with Medical Evidence

The ALJ found that Dr. Drenguis' opinion as to Plaintiff's walking, postural,

and manipulative limitations was inconsistent with the otherwise generally normal

physical examinations.  Tr. 23.  Relevant factors to evaluating any medical opinion

include the amount of relevant evidence that supports the opinion, the quality of

the explanation provided in the opinion, and the consistency of the medical opinion

with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir.

2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may choose to

give more weight to an opinion that is more consistent with the evidence in the

record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (2012) ("the more consistent a

medical opinion is with the record as a whole, the more weight we will give to that

medical opinion"). Here, Dr. Drenguis opined that Plaintiff's walking, postural,

and manipulative limitations were attributable to her chronic lumbar and cervical

sprains, internal derangement of her left shoulder, and asthma. Tr. 383-84.

However, the ALJ found that physical examinations throughout the record

consistently showed normal gait and full strength, normal bilateral upper

extremities except for some limitation of her left shoulder, and mostly normal

respiratory findings, which all weighed against Dr. Dregnuis' assessment that

Plaintiff was limited to standing/walking for at least two hours in an eight-hour

workday, occasional climbing of stairs, occasional stooping, kneeling, crouching,

and crawling, and frequent handling, fingering, and feeling. Tr. 23, 383-84; *see,*

*e.g.,* Tr. 285-86, 336 (March 2009: an MRI of Plaintiff's lumbar spine showed

good alignment with very well-preserved intervertebral lumbar discs, minimal

degeneration at the L5-S1 level, a small central annular tear at the L5-S1 level,

mild effusion at the L5-S1 joint, no significant scoliosis, and no evidence of neural

foraminal compression); Tr. 356 (January 2015: normal examination results of Plaintiff's cervical, thoracic, and lumbar spine); Tr. 492 (October 2015: Plaintiff had intact range of motion in all extremities and denied weakness or numbness in her left arm); Tr. 376, 499-500 (October 2015: Plaintiff's left shoulder x-rays showed no abnormalities and were described as "normal"); Tr. 393 (November 2015: imaging of Plaintiff's cervical spine showed no acute osseous injury); Tr. 380, 383 (April 2016: Plaintiff reported that she was "comfortable lifting around 20 pounds"; physical examination showed decreased range of motion of Plaintiff's lumbar spine, but full strength in the bilateral upper and lower extremities); Tr. 389 (May 2016: Plaintiff displayed normal gait); Tr. 788 (October 2016: Plaintiff denied back pain); Tr. 786 (January 2017: Plaintiff displayed normal gait; musculoskeletal and neurological examinations were normal); Tr. 610 (February 2017: Plaintiff displayed normal gait; musculoskeletal and neurological examinations were normal); Tr. 597 (May 2017: Plaintiff displayed normal gait, coordination, and balance; musculoskeletal and neurological examinations were normal); Tr. 782 (August 2017: Plaintiff displayed normal gait; musculoskeletal and neurological examinations were normal); Tr. 509 (January 2015: Plaintiff had no signs of respiratory distress; upon examination, respirations and breath sounds were normal); Tr. 482 (April 2015: Plaintiff had even, unlabored respiratory effort); Tr. 324 (November 2015: Plaintiff's asthma was stable on medications);

ORDER - 17

Tr. 664 (February 2016: Plaintiff's COPD was stable on medications); Tr. 610 (February 2017: Plaintiff's respiratory examination was normal); Tr. 482 (April 2017: Plaintiff's respiratory effort was even and unlabored); Tr. 597 (May 2017: Plaintiff's respiratory examination was  normal).  While both parties agree that the ALJ incorrectly found Dr. Drenguis "did not have the benefit of objective imaging of the spine, which were generally mild or within normal limits," the ALJ correctly noted that the MRI of Plaintiff's lumbar spine showed only mild disc bulging of L4-5 and mild bulging of L4-S1.  Tr. 22-23 (citing Tr. 336); *see* ECF No. 13 at 8; ECF No. 14 at 10.  Based on this record, the ALJ reasonably concluded that Dr. Drenguis' opined walking, postural, and manipulative limitations were inconsistent with the otherwise generally normal physical examinations.

### 2.  Ms. Hardison

Mary Alice Hardison, ARNP, completed a medical report of Plaintiff on August 31, 2017.  Tr. 549-50.  Ms. Hardison diagnosed Plaintiff with COPD, post-traumatic stress disorder (PTSD), anxiety, cervicalgia, and hypertension.  Tr. 549.  She opined that Plaintiff had to sit and rest due to shortness of breath for 15 to 20 minutes at least three to four times per day, and that Plaintiff would miss work four or more days per week due to difficulty breathing and anxiety.  Tr. 549-50.  She opined that work on a continuous basis would cause Plaintiff's condition to deteriorate.  Tr. 549.  Ms. Hardison concluded that Plaintiff was severely limited

and unable to lift at least two pounds or stand and/or walk. Tr. 550. The ALJ gave Ms. Hardison's opinion little weight. Tr. 24. Because Ms. Hardison was an "other source," the ALJ was required to provide germane reasons to discount her opinion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ found that Ms. Hardison's opinion was inconsistent with the medical evidence of record, including her doctor's recommendation that she walk for 30 minutes every day. Tr. 24. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports). Here, Ms. Hardison opined that Plaintiff was so severely limited that she was unable to lift at least two pounds or to stand and/or walk. Tr. 550. However, the ALJ found that physical examinations showed Plaintiff had full strength, normal gait, and normal station. Tr. 24; *see, e.g.,* Tr. 389, 597, 610, 782, 786 (normal gait); Tr. 492 (intact range of motion in all extremities; Plaintiff denied weakness or numbness in left arm); Tr. 380, 383 (full strength in the bilateral upper and lower extremities). The ALJ also cited Plaintiff's report that she was comfortable lifting 20 pounds and her doctor's recommendation that she exercise most days of the week by walking for at least 30 minutes. Tr. 24 (citing Tr. 380, 675, 783). Further, the ALJ found that Plaintiff's breathing-related issues were controlled with medication. Tr. 24; *see, e.g.,* Tr. 324,

327 (asthma stable on medications); Tr. 597, 610, 782, 789 (normal respiratory examination); Tr. 482 (respiratory effort was even and unlabored); Tr. 509 (respirations normal, breath sounds normal). Plaintiff argues that the record contains evidence to support Ms. Hardison's conclusion that Plaintiff's anxiety, triggered by stress, contributed to her inability to work, and that the ALJ did not adequately consider the effect of exertion and stress on Plaintiff's asthma symptoms. ECF No. 13 at 11-12. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Based on this record, the ALJ reasonably concluded that Ms. Hardison's opinion of disabling limitations was inconsistent with the medical evidence.

## B.    Lay Opinion Evidence

Plaintiff challenges the ALJ's rejection of the lay witness statements of her son, Jonathan Keefer. ECF No. 13 at 13. An ALJ must consider the statements of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r, Soc.*

*Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4); *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

Mr. Keefer submitted a third-party function report on April 12, 2016, describing Plaintiff's limitations. Tr. 214-21. He reported that Plaintiff was only able to walk about 30 feet before needing to stop and rest, and then she would have to use her inhaler. Tr. 219. Mr. Keefer indicated that Plaintiff had difficulty lifting, squatting, bending, standing, reaching, walking, sitting, completing tasks, and using her hands. Tr. 219. The ALJ considered this evidence and discounted Mr. Keefer's opinion. Tr. 24. Because Mr. Keefer is a lay witness, the ALJ was required to give germane reasons to discount his statements. *Nguyen*, 100 F.3d at 1467.

## 1. Inconsistent with Medical Evidence

The ALJ discounted Mr. Keefer's opinion because his report of Plaintiff's limited walking and overall functioning was inconsistent with the record. Tr. 24. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis*, 236 F.3d at 511-12 (germane reasons include inconsistency with medical evidence, activities, and reports). Although Mr. Keefer reported that Plaintiff was only able to walk 30 feet at the most before requiring the use of an inhaler, the ALJ observed, as discussed *supra*, that the objective medical evidence was not consistent with the level of severe limitation alleged. Tr. 24; *see* Tr. 324, 327 (Plaintiff's asthma was stable on medications); Tr. 597, 610, 782, 789 (Plaintiff had normal respiratory examinations); Tr. 482 (Plaintiff's respiratory effort was even and unlabored); Tr. 509 (Plaintiff's respirations and breath sounds were normal). The ALJ also noted that Mr. Keefer's statements were inconsistent with Plaintiff's testimony. Tr. 24; *see* Tr. 44 (Plaintiff testified that she could walk "maybe 100 feet"). The ALJ reasonably concluded that this evidence was inconsistent with the level of impairment reported by Mr. Keefer. Tr. 24. Plaintiff asserts the ALJ erred in making this finding, arguing that Mr. Keefer's statements were consistent with the opinions of Dr. Drenguis and Ms. Hardison. ECF No. 13 at 13. As discussed *supra*, the ALJ provided a specific and legitimate reason supported by substantial

evidence to discount Dr. Drenguis' opinion and provided a germane reason to discount the opinion of Ms. Hardison. Inconsistency with the record evidence was a germane reason to discount Mr. Keefer's opinion.

*2. Vague Statements*

The ALJ also found that Mr. Keefer's report was vague and provided minimal insight into Plaintiff's functioning. Tr. 24. Failure to provide support or explanation is a germane reason to discredit the opinion of a nonacceptable medical source. *Molina*, 674 F.3d at 1111-12. Mr. Keefer's report contained minimal narrative explanation. Tr. 214-21. In light of the inconsistencies between Mr. Keefer's opinion and the record as a whole, the ALJ reasonably concluded that the vague statements in Mr. Keefer's report did not sufficiently explain the significant limitations Mr. Keefer noted. Tr. 24.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED October 30, 2019.

<u>*s/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE